Pike *v.* Crehore.

# COUNTY OF FRANKLIN.

PIKE, *in review, versus* CREHORE.

The plaintiff being indebted to defendant, in Sept. 1834, sent him the money by mail, which he alleged he never received, and the plaintiff afterwards paid him the debt. Subsequently the plaintiff was satisfied that the money sent by mail was received by the defendant, and commenced his suit to recover it. The defendant offered to prove that, in 1836, there were found in the house where the mail carrier of the supposed lost letter lived in 1834, a number of letters, secreted in the wall and under the floors of the house, broken open, bearing date in 1834, post marked at other places than where found, and directed to persons in another town : —

*Held,* that this evidence or any declarations by such mail carrier, unaccompanied by any acts, was inadmissible.

In such suit, the entries in the books of a bank, made by a cashier, deceased, in the ordinary course of his business, tending to prove any fact material to the issue, are proper evidence; but where such books are rejected by the presiding Judge, the objecting party must bring the rejected documentary evidence before the Court, that by inspection or some other way, the fact of its admissibility may be determined; otherwise, the presumption is, that they were rightfully excluded.

As proof of the bankruptcy of plaintiff, were offered copies of all the papers made by the applicant to the District Court of Massachusetts, the orders and decrees of the Court, appointment, bond and account of the assignee, and the marshal's certificate, tacked together by a ribbon, to which was prefixed the certificate of the clerk of that District Court, that it contained the copies of the whole record in that case, with the seal of the Court affixed, but on several of the papers thus tacked together, was also his certificate that they were true copies : It was held, that the document thus offered, was not duly authenticated as a copy of a record, and was rightfully rejected.

*Quere,* whether, under the plea of the general issue only, the bankruptcy of a plaintiff may be given in evidence.

ON EXCEPTIONS from *Nisi Prius,* SHEPLEY, C. J., presiding.

This was an action in REVIEW, tried at the Oct. term, 1854.

The original action, *Crehore* v. *Pike,* was assumpsit for money had and received, commenced on April 10, 1849, and

tried, under the general issue, in August, 1851, when a verdict was returned for the plaintiff.

On the trial in review, the original plaintiff introduced evidence tending to show that, on Sept. 2, 1834, he enclosed, from Boston, a $500 bill on the Oriental Bank, by mail, to said Pike, at Kingfield, Maine, being indebted to him in that or a larger sum, and that Pike, by some means, without the knowledge of the post-master at Kingfield, obtained possession of said letter enclosing the bill, and then denied the reception thereof; and, thereupon, Crehore paid the whole amount due to said Pike without deducting this sum; and there was evidence introduced by Pike, tending to repel the same.

There was testimony on the part of the original defendant tending to show, that the letters directed to Kingfield and mailed at Boston, would be carried there either by the way of Anson on one route, or by the way of Belgrade, Industry and New Vineyard on the other, and it appeared by the records of mails received at Kingfield in the month of September, 1834, that but one letter on which the postage was equal to 18¾ cents was received at said Kingfield during that month, and that was received upon the 18th day thereof; and there was testimony tending to prove, that the letter received on that day was taken from the post-office by one Welcome, the then clerk of said Pike, and while said Pike was away from home and at Dead river, and that that letter contained no bank bill.

It was further proved, that the mail to Kingfield which then passed through Industry was detained at West's mills in that town over Sunday, and during the month of September, A. D. 1834, and for a year or two before was carried by one Josiah Emery, and further, that one West was present at an examination of one of the mail bags so carried by Emery, neither near the commencement nor close of his carrying, and ascertained that letters could be taken from it without opening it; that this bag was not used afterward, and that Emery carried the mail but one trip after

the rumor that the $500 bill had been lost; and there was further testimony tending to prove, that a bill of $500, on the Oriental Bank, Boston, was exchanged with the cashier of the Augusta Bank, at Augusta, in September, 1834, as early as the 22d of that month, and that the person with whom he exchanged the money was rather tall, slim, light complection, sandy, straight, and quick in motion; and there was also testimony, that Josiah Emery, the then mail carrier by the way of Industry, was a man a little above common height, slim, light complection, and quick in motion, little sandy, and that at the time said Emery carried the said mail in 1834, and before, he resided in a certain house near to West's mills in said Industry. And the defendant offered to prove, and called witnesses for that purpose, that in the year 1836, there was found by said witnesses in the same house where said Emery resided, during the month of September, 1834, a number of letters secreted in the wall and under the floors of said house, bearing date in 1834, post-marked at other places and directed to persons who did not reside in said town of Industry, but at Kingfield afore-said, and that said letters had been broken open before they were found; he further offered to prove, that said Emery, having quit carrying said mail, at the next trip after the news of the loss of said five hundred dollar bill was re-ceived at Industry, obtained leave to carry it to Kingfield for another trip, and made certain statements at the time tending to implicate himself, such as that he wished to carry the mail that trip to prevent suspicion falling on him; and further, that said Emery, while in prison at Bangor within the last year, had confessed that he took the letter addressed to said Pike and the money enclosed, and that Pike was innocent.

But all the foregoing offers and the testimony therein contained was rejected by the Court.

It became material in the progress of the trial to show on what day the said $500 bill went out of the Augusta Bank, and that it was in the forenoon of September 22,

1834, and for that purpose, they offered the book of discounts, the journal and cash book of the Augusta Bank for Sept. 1834, which were in the handwriting of the cashier, long since deceased, wherein were certain entries made by Crosby, the cashier, of moneys paid out by him in the ordinary course of his business, tending to prove that said bill went out of the bank in the forenoon of Sept. 22, 1834, but it not appearing there was any entry respecting that bill, the books were excluded.

The original defendant further offered in evidence a document which was marked A, and consisted of copies of all the papers in a case in bankruptcy, on the petition of Edward Crehore, under the late Bankrupt Act of the United States, addressed to the District Judge of Massachusetts, and his discharge under said Act. The papers were fastened together by a ribbon with a seal of the District Court of Massachusetts attached; and a certificate of the clerk, that the papers hereunto annexed are each and all true copies of the record in the matter of Edward Crehore, and that they were copies of the whole record in that case. The several papers were also certified by the clerk as true copies.

This document was rejected by the Court.

A verdict was returned for the original plaintiff, and the defendant excepted to the rulings. The action in review was tried upon the former pleadings, the general issue, and a brief statement of the statute of limitations.

*J. H. Webster*, in support of the exceptions.

The finding of the letters and the anxiety manifested by Emery when the rumor circulated of the loss of the bill were competent, considered in the light of acts or declarations. Emery was the agent of Crehore for transmitting the money to Pike at Kingfield. Whether these declarations and acts were made while he held the money as such agent or not, is not certain, but if made while he held the money, being the acts and declarations of Crehore's agent, should bind Crehore.

The hidden letters, under the circumstances proved, strongly pointed to Emery as the guilty party, and so far exculpated the defendant, and that fact should have been allowed to go to the jury.

The confession of Emery in prison, made to his own prejudice, must be presumed to be true, and so would exonerate Pike.

The case finds that it became material to prove that the bill in controversy went out of the Augusta Bank in the forenoon of Sept. 22, 1834, and that the books offered, tended to prove that fact. Why should not such evidence be admissible? According to the case, it had a direct bearing upon the issue. These books and entries were, therefore, of the utmost importance to Pike, if admissible. And as between these parties, we contend they were.

The cashier was dead; the entries were made in the usual course of his business, and they became evidence for third persons. *Welch* v. *Barrett*, 15 Mass. 380; *Price* v. *Earl of Torrington*, 1 Salk. 285; *Pitman* v. *Maddox*, 2 Salk. 690; *Warren* v. *Greenville*, 2 Stran. 1129; *Higham* v. *Ridgeway*, ——; *Barry* v. *Babbington*, 4 T. R., 514; *Herbert* v. *Tuckel*, 5 T. R. 84; *Doe* v. *Turford*, 3 Bar. & Al. 890; *Union Bank* v. *Knapp*, 3 Pick. 96; *North Bank* v. *Abbott*, 13 Pick. 465; *Augusta* v. *Windsor*, 19 Maine, 317; *Nichols* v. *Webb*, 8 Wheat. 337; *Trull* v. *True*, 33 Maine, 367.

Again, that which is called a *document* in the exceptions, was offered as an authenticated copy of the record in bankruptcy in the matter of said Crehore, and called a *document* to procure the signature of the presiding Judge to the exceptions, as he declined to sign them if it was called a record. It is contended that the *document* produced was an authenticated copy of the record, and a copy of the whole record, and contained nothing more, and that the omission of a single thing or paragraph therein contained, would leave the record incomplete. Stat. U. S. of Aug. 19, 1841,

§ 13, also § 6.   The rules made under this section, become a part of said Act in the district where they are made.

The petition, order of Court, with the schedules annexed, are made part of the record by § § 1 and 13 of that Act.

Next comes the bond of the bankrupt, required by rule 30, of the Mass. Dist. Court, and such bond became part of the record, under § 13.

The decree declaring Crehore a bankrupt, no one will deny as being part of the record.   The decree appointing the assignee, with the marshal's return thereon with the assignee's acceptance of the trust, furnished evidence that he assumed to act.   That belongs to the files of the Court, and becomes, by § 13, part of the record.

So all the papers of the assignee are made and returned under the rules prescribed by said Act, and go to make up the record.

Is this record properly authenticated?   *Every* paper is separately certified by the district clerk, in his official capacity.

By the Bankrupt Act, every U. S. District Court, so far as it proceeds in bankruptcy, is made a domestic court to every State court.   And copies of records of domestic courts, attested by their clerks, are held to be evidence of the record.   *Ladd* v. *Blunt*, 4 Mass. 402.   In accordance with this usage, every paper in this record is properly authenticated, and in addition to the certificate to the original petition and schedules, the first decree, to the discharge and the assignee's return the clerk has affixed the seal of the Court.

This record ought to have been admitted, and by § 3, of the Bankrupt Act, all property and rights of property by decree of bankruptcy, are vested in the assignee.

By this proceeding, the plaintiff was estopped to maintain this action.   The plaintiff had no interest in this bill, he was divested of its possession before his bankruptcy, and all his rights vest in his assignee.   *Brandon* v. *Pate*, 2 H. Bl. 308; *Smith* v. *Coffin*, 2 H. Bl. 444; *Clark* v. *Col-*

Pike *v.* Crehore.

*vert,* 8 Taunt. 742; *Kitchen* v. *Bartsch,* 7 East, 53; *Day* v. *Lafflin,* 6 Met. 280; *Ames* v. *Gilman,* 10 Met. 239; *Mitchell* v. *Great Works Milling and Manuf. Co.* 2 Story, 648.

The bankruptcy of plaintiff having taken place before action brought, may be given in evidence under the general issue. 1 Chit. Plead. 158, 465, and authorities there cited; *Webb* v. *Fox & al.* 7 T. R. 391; *Thompson & al.* v. *Freeze,* 10 East, 418; 2 Chit. Pl. 426, (note n;) Bull. N. P. 153.

The decision of this case cannot be affected by an Act passed by the present Legislature, entitled "An Act in relation to bankrupt plaintiffs," and designed to influence this case. The law, as it was at the hearing, is to be settled. *Inhab. of Macnawhoc plan.* v. *Thompson,* 36 Maine, 365.

The Legislature had no constitutional power to pass such a law to have any binding effect on this case. It is an attempt to repeal a portion of an Act of Congress.

*J. S. Abbott, contra.*

The offered evidence, as to the letters, was altogether too remote, and had no connection with the subject matter of the suit.

The declarations of Emery, made in 1834, could have had no legitimate effect, if received. But neither them nor the statements alleged to have been made at Bangor, are receivable on legal principles. They were not under oath, nor any part of any act provable, and no reason appears why the testimony of Emery should not have been given.

The bank books contained nothing relevant to the case. There was no entry respecting the bill in controversy. There is an error in the exceptions in relation to this. It should have read, "tending to prove, *as alleged,* that said bill," &c.

Unless some specific entry on said books is exhibited to the Court, which ought to have been received by the jury, the Court could hardly, after these repeated trials, set aside the verdict, and especially if, on inspection of the books, it

is apparent that no such entry exists, and that if a new trial should be granted, the books would be again excluded.

Besides, I know of no principle on which the books are receivable, even if the entries tend to establish the fact as claimed.

As to the rejection of the document, there are several reasons for it : —

1st. There was no appropriate plea or brief statement under which such evidence was admissible. The Court might have allowed additional issues, but could not in this case, as it was apparent, by so doing, injustice would be done.

2d. The document is not properly certified. The certificate on the first page is a loose, uncertain and insufficient way of certifying a record. On page 10, the clerk certifies that the foregoing are true copies of the petition and of his schedules; not true copies of the record of the same, as stated on page 1. There are sundry papers including forty six pages; and after the eleventh page there are ten more certificates of the clerk, some of which certify that the preceding papers are true copies of the *record,* and some true copies of the *papers.* Hence, the certificates are contradictory and it is impossible to tell which to rely on.

3d. The document contains twenty-three separate papers, and many of them irrelevant under any state of pleadings; as they were all presented together, the whole are properly rejected. *Tibbetts* v. *Baker,* 32 Maine, 25.

4th. The Act passed March 16, 1855, has a legal applicability to this case, affecting only the remedy and mode of proceeding, and the party here has complied with the provisions of that Act. *Thayer & al.* v. *Seavey,* 11 Maine, 284; *Madison* v. *Co. Com.* 34 Maine, 592; *Detroit* v. *same,* 35 Maine, 373.

Besides, this action can be maintained on the authority of *Sawtelle* v. *Robbins,* 23 Maine, 196, especially after the filing of the assignee's consent, a copy of which is herewith furnished the Court.

RICE, J. — The case comes before us on exceptions. The first objection to the ruling of the Judge who tried the cause is founded on the exclusion of testimony offered, to prove that, in 1836, letters were found secreted in a house in which one Emery lived, in Sept. 1834, in the town of Industry. Said Emery, in 1834, carried the mail through Industry to Kingfield, over one of the routes by which a letter from Boston might pass on its way to Kingfield. The letters found secreted, bore date in 1834, had been opened, and were directed to persons residing in Kingfield. But it did not appear that Emery lived in the house referred to after Sept. 1834, nor that the letter in which the original plaintiff forwarded the money in controversy was there found, nor that those letters, which were found, in any way related to the parties in this suit. No ground is perceived upon which such letters could have been legally admitted.

An offer was also made to prove certain declarations of the same Emery, made at different times after the loss of the money in controversy. Those declarations were unaccompanied by any acts of which they were explanatory, and came from a person, who, so far as any thing appears in this case, was a competent witness. Such declarations were merely hearsay, and as such properly excluded.

The case finds, that it became material in the progress of the trial to show on what day the said $500 bill went out of the Augusta Bank, and to show that it was in the forenoon of the 22d day of September, 1834, and for that purpose the books of said bank, the cashier by whom said books were kept, having long since deceased, were offered as evidence, tending to prove that said bill went out of the bank in the forenoon of said 22d day of September, 1834; but it not appearing that there was any entry respecting that bill, the Court excluded said books.

It is now contended, that these books were improperly rejected. If the entries in those books did tend to prove a fact material to the issue then before the jury, they should have been admitted. They were manifestly rejected, be-

cause, in the opinion of the Judge, they had no such legitimate tendency. The case does not show how, or in what manner the entries in the rejected books became material, nor in what way they would tend to establish any fact proper to be proved in the case. They are not made part of the case by reference or otherwise. It was the duty of the excepting party to bring the evidence so rejected before the full Court, that by inspection, or in some other way, it could determine upon its admissibility. Not having done so, the presumption is, that the evidence offered was properly excluded.

The next matter of exception is the exclusion, by the Judge, of a *document*, referred to in the exceptions, and marked A. This document contains a large number of papers, purporting to be copies of record, and of other papers, on file in the office of the clerk of the United States District Court, for the District of Massachusetts, and were offered as evidence of the bankruptcy of the plaintiff before he commenced the original action.

The action was assumpsit. The trial was upon the general issue. The bankruptcy of the plaintiff was not pleaded either specially or by brief statement. It is contended by the original defendant, that the bankruptcy of the plaintiff may be proved under the general issue, without being otherwise pleaded. This position is controverted by the plaintiff.

Judge STORY, in his work on pleading, page 132, says, "Bankruptcy of the defendant must be specially pleaded. But bankruptcy of the plaintiff may be given in evidence under the general issue."

In 1 Saunders' Pleading, 433, it is said that "the plaintiff's bankruptcy might, formerly, be given under the general issue," and *Webb* v. *Fox*, 7 T. R. 396; B. N. P. 153; *Norton* v. *Shakspeare*, 15 East, 622; 3 Camp. 236, are cited as authorities for the practice. " But now, it must be pleaded specially in assumpsit and debt," for which *Pitt* v. *Chappellow*, 8 M. & W. is cited.

Under the plea of non assumpsit, the defendant might, before the new rules, give in evidence, that the plaintiff was a bankrupt, when that circumstance would defeat his right of action.   1 Chit. Pl. 478.

As the object of pleading always is to apprise the other party of the ground of defence, in order that he might be prepared to contest it, and might not be taken by surprise, it was singular, that under the general issue, which, in terms, only denies the promise, the defendant should be permitted to avail himself of a ground of defence which admitted a valid promise, but insisted that it had been performed, or that there was an excuse for non-performance, or that it had been discharged.   1 Chit. Pl. 478.

The authorities upon this point are conflicting, and though we do not intend to say, that the bankruptcy of the plaintiff may not be given in evidence under the general issue, it is more in conformity with the principles and objects of pleading that such defence should be distinctly set out by plea or brief statement.   It does not appear, however, that the papers offered to prove the plaintiff's bankruptcy were rejected on that ground.

The document marked A, contains, as has been before remarked, a large number of separate papers, attached together by an ordinary tape.   Prefixed to these papers, and under the seal of the Court, is a certificate of the clerk to the effect, that the "papers hereunto annexed, are each and all true copies of the record in the matter of Edward Crehore of Dorchester in bankruptcy, in said Court, and that they are copies of the whole record in that case." There are no marks upon the papers annexed to this certificate, by which their identity can be determined.   Upon one of the papers now in the *document* is a certificate of the clerk of said District Court, " that the foregoing are true copies of the petition of Edward Crehore of Dorchester, to be declared a bankrupt, and of his schedules of assets and liabilities annexed to the said petition."   Several other papers are simply certified as " a true copy."   These papers

were offered, in one document, as evidence to prove the bankruptcy of the plaintiff.

Section 45, c. 133, R. S., provides, that the records and proceedings of any Court of another State or of the United States, shall be admissible in evidence in all cases in this State, when authenticated by the attestation of the clerk, prothonotary or other officer, having charge of the record of such Court, with the seal of such Court annexed.

There being many papers in the document referred to, which were not legally authenticated as copies of any record, of any Court, and which were consequently irrelevant to the issue then before the jury, and these papers being offered with others to which the objection might not apply, in such a manner as that they must all have gone to the jury together, without any thing to indicate to them which were, and which were not, proper for their consideration, the whole document was properly excluded. *Tibbetts* v. *Baker*, 33 Maine, 25.

The operation of the statute of March 16, 1855, in relation to bankrupt plaintiffs, is unimportant, so far as this action is concerned.   *Exceptions overruled and Judgment on the verdict.*